ILENE J. LASHINSKY (#003073)
United States Trustee
District of Arizona

RICHARD J. CUELLAR (#WI 01006631)
230 North First Avenue, Suite 204
Phoenix, Arizona 85003-1706
602.682.2600

EDWARD J. MANEY, Esq. (#012256)
Chapter 13 trustee
P.O. Box 10434
Phoenix, AZ 85064
(602) 277-3776 Ext. 213
ejm@maney13trustee.com

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: ) | CHAPTER 11 |
| ) | |
| LARRY E. SMITH and ) | Case No. 2-09-bk-21133-RTB |
| JOHNETTE E. SMITH ) | |
| ) | **Adv. No. 2-10-ap-00988-RTB** |
| Debtors. ) | |
| ) | |
| UNITED STATES TRUSTEE and ) | |
| EDWARD J. MANEY, ) | |
| Chapter 13, trustee, ) | |
| Plaintiffs, ) | AMENDED COMPLAINT FOR SANCTIONS |
| v. ) | AGAINST NASSER U. ABUJBARAH |
| ) | |
| NASSER U. ABUJBARAH ) | |
| ) | |
| Defendant. ) | |

The United States Trustee, by and through her counsel, Richard J. Cuellar, and Edward J. Maney, chapter 13 trustee, Plaintiffs, for their Complaint, respectfully allege the following:

**I. JURISDICTION AND PARTIES**

1. This is a proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.

2. Venue is proper pursuant to 28 U.S.C. § 1409.

3. This Court has authority to grant the relief requested pursuant to Rule 9011, Federal Rules of Bankruptcy Procedure, Rule 9011-1, Local Rules of Bankruptcy Procedure adopted by

1  General Order No. 67, 11 U.S.C. § 105 and the Court's inherent authority to regulate the attorneys who practice before it.

4.   The United States Trustee, plaintiff herein, has the statutory responsibility, pursuant to 28 U.S.C. § 586, among other things, to supervise the administration of cases filed in the United States Bankruptcy Court and, pursuant to 11 U.S.C. § 307, may raise and may appear and be heard on any issue in any case or proceeding under title 11, United States Code.

5.   Edward J. Maney, chapter 13 trustee, plaintiff herein, (hereinafter referred to as "Maney") is a duly appointed and now serving standing trustee with the responsibility of administering chapter 13 cases assigned to him. Maney filed an application for Order to Show Cause requesting, among other things, sanctions against Nasser U. Abujbarah. At the initial hearing on the Order to Show Cause, the parties hereto, for purposes of judicial economy and to limit costs and expenses, agreed to have the allegations in the Application for Order to Show Cause incorporated into this adversary proceeding and to join Maney as a plaintiff herein. The Court approved the stipulation of the parties.

6.   Nasser U. Abujbarah (hereinafter referred to as "Abujbarah") is a resident of the State of Arizona and practices bankruptcy law in the United States Bankruptcy Court for the District of Arizona.

7.   Abujbarah is, and at all times relevant hereto, was a member of the State Bar of Arizona, having been admitted to practice law in Arizona on October 21, 2008.

8.   Abujbarah is, and at all times relevant hereto, was a member of the federal bar having been admitted to practice before the United States District Court for the District of Arizona on May 18, 2009.

**II.  GENERAL**

9.   On May 21, 2009, Abujbarah filed his first petition in bankruptcy in *In re Rundle*, case no. 2-09-bk-11111-SSC, a chapter 11 proceeding.

10.  Abujbarah's first chapter 13 case, *In re Almanza*, case no. 2-09-bk-11882-SSC, was filed May 29, 2009. The case was dismissed for numerous deficiencies on October 7, 2009.

11.  Abujbarah's first chapter 7 case, *In re Pisanelli*, case no. 2-09-bk-20363-RJH was

filed August 23, 2009.

12. From May 21, 2009 through April 19, 2010, Abujbarah has filed 258 bankruptcy cases of which 57 are chapter 11 cases, 15 are 7 cases and the remainder are chapter 13 cases. Some of the chapter 11 cases originally were filed as chapter 13 cases and some of the chapter 7 cases originally were filed as chapter 13 cases.

13. On information and belief, none of the chapter 13 plans filed by Abujbarah has been approved nor have any chapter 11 plans of reorganization been confirmed.

14. Prior to filing his first bankruptcy case in *Rundle*, Abujbarah participated in 9 chapter 13 cases that were filed on a *pro se* basis. The debtors in the 9 cases had retained Sellectricon, LLC (hereinafter referred to as "Sellectricon") to seek modification of their mortgages and were advised by Sellectricon to file chapter 13. At the time, Abujbarah was under contract to provide legal services to Sellectricon. When motions to lift the automatic stays were filed in the 9 cases, Abujbarah filed responses and, on information and belief, billed Sellectricon for such services.

15. Over the short course of his bankruptcy practice, Abujbarah has exhibited a pattern of:

    A. incompetence, negligence and failure to diligently represent clients;

    B. asserting claims, defenses and other legal contentions not warranted or supported either by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

    C. presenting or denying factual allegations and other factual contentions that have no evidentiary support;

    D. violations of bankruptcy code provisions prohibiting fee sharing;

    E. assisting non-lawyers in the practice of law in bankruptcy cases;

    F. filing false claims;

    G. conflicts of interest.[1]

---

[1] A few examples are given for each subcategory, however, much more evidence for each exists and will be presented to the Court. Also, references to violations of ethical rules are included in each of the subcategories.

3

**III. INCOMPETENCE, NEGLIGENCE AND FAILURE TO DILIGENTLY REPRESENT CLIENTS**

16. <u>In virtually every case</u> filed by Abujbarah, schedules and statements are not properly completed and numerous errors, omissions and misstatements exist. For example, in the case of *In re Mejia*, case no. 2-09-bk-9223-GBN, the debtor's name is spelled incorrectly on the petition, a prior ch. 13 case, filed by Abujbarah for the debtor, is not listed on the petition, life insurance is not reported on schedule B and rental income is not included on schedule I. In the case of *In re Graham*, case no. 2-10-bk-9614-RTB, absolutely no assets are listed on schedule B including wearing apparel, no income is listed at item 1 of the Statement of Financial Affairs (hereinafter referred to as the "SOFA") even though schedule I shows the debtor is employed, item 9 of the SOFA indicates no payments were made to Abujbarah for representation in the case and the statement of intention indicates both that the debtor intends to retain her residence by reaffirming the debt and to surrender her residence.

17. In a response to a motion to convert or dismiss a chapter 11 case, Abujbarah stated, "Inaccurate information occurs in a substantial number of bankruptcy schedules, or certain information is omitted, thus corrections are made there is no intent to miss lead the Court and/or creditors." (*sic*) <u>See</u> *In re Neiswender*, case no. 2-09-bk-18916-CGC, docket no. 69 at page 2.

18. A meeting of creditors was scheduled in Tucson for March 11, 2010 in the case of *In re Ventura*, case no. 4-09-bk-32134-JMM. The meeting was properly noticed to all interested parties including Abujbarah who is attorney for the debtors therein. Debtors, traveling from their home in Casa Grande, appeared but Abujbarah did not appear. The meeting was continued to March 25, 2010 requiring the debtors to make another journey to Tucson.

19. On information and belief, Abujbarah has advised his clients to cease payment of mortgages and vehicle purchase agreements upon the filing of the petition resulting in stay relief being granted and loss of real and personal property to the secured creditors.

20. On information and belief, Abujbarah did not know he was required to seek approval to be appointed as attorney for debtors in chapter 11 cases. Although Abujbarah had 10 pending chapter 11 cases by the end of August, 2009, he did not file any applications until after several direct demands by staff of the Office of the United States Trustee.

4

21. Abujbarah admitted in open Court that he was unaware that he is required to seek approval of compensation in chapter 11 cases and asserted that it was his understanding that a statement filed pursuant to F.R.B.P. 2016(b) justified application of retainer funds to his compensation. On information and belief, Abujbarah applied the retainers received in all chapter 11 cases to his fees without Court authority.

22. The United States Trustee conducts an Initial Debtor Interview (hereinafter referred to as the "IDI") in every chapter 11 case. Prior to the IDI, correspondence is sent to debtor's attorney concerning issues to be discussed and documents to be produced at the IDI. Abujbarah inevitably fails to produce all the requested documents in a timely fashion, has failed to appear for scheduled IDIs, has appeared and been unfamiliar with the case, and, on numerous occasions, requested rescheduling on very short notice.

23. Local Rule 9011-1 makes the Rules of Professional Conduct as set forth in Rule 42 of the Rules of the Supreme Court of the State of Arizona (hereinafter referred to as the "Bar Rules") applicable to attorneys who file any pleading or document or who are heard in any matter before the Bankruptcy Court.

24. Bar Rules provide that an attorney has an ethical duty to provide competent representation which requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. [E.R 1.1] The very first petition in bankruptcy filed on behalf of a client of Abujbarah was in a chapter 11 case. Abujbarah had no experience in chapter 11 proceedings at the time although the application to employ attorney eventually filed by him provides that Abujbarah "is experienced in Bankruptcy practice and Chapter 11 proceedings." Abujbarah has failed in every instance to exhibit the level of legal knowledge and skill reasonably necessary for the representation of a chapter 11 debtor.

The preparation of schedules and statements has been considerably less than thorough. In chapter 11 cases, Abujbarah consistently failed to schedule hearings when appropriate and he failed to properly notice hearings when set.

25. Virtually all of Abujbarah's bankruptcy cases, whether chapter 11 or chapter 13, involve similar issues, *i.e.*, individuals seeking to retain real estate. Despite the seemingly clear

Bankruptcy Code prohibitions against modifying the rights of holders of claims secured only by the debtors' principal residence, on information and belief, Abujbarah has informed his clients that he will be able to modify the rights of such holders.

26. Bar Rules provide that an attorney has an ethical duty to render candid advice. E.R. 2.1 Abujbarah may have misinformed his clients leading them to believe that he would be able to modify the rights of holders of claims secured by a first mortgage on their residences. It appears Abujbarah may have instructed his clients, possibly to their detriment, to cease making post-petition payments on such mortgages. Abujbarah did not fully inform his clients that he intended to seek a change to or modification of the current law, the likely process for the challenge and the ramifications thereof. Testimony of Abujbarah's clients at meetings of creditors indicates that they do not understand the process or what is at stake.

27. Further evidence of incompetence is the fact that Abujbarah contacted the United States Trustee in *In re Jonas, d/b/a Alba Investment Group, LLC*, case no. 2-09-bk-31285-GBN, requesting the United States Trustee to "aid the estate in essentially rescinding the receivership in bankruptcy court." Clearly, Abujbarah did not have the legal knowledge or skill reasonably necessary to provide representation to the Debtor in Possession.

**IV. ASSERTING CLAIMS, DEFENSES AND OTHER LEGAL CONTENTIONS NOT WARRANTED BY EXISTING LAW OR BY A NONFRIVOLOUS ARGUMENT FOR THE EXTENSION, MODIFICATION, OR REVERSAL OF EXISTING LAW OR THE ESTABLISHMENT OF NEW LAW**

28. As mentioned, virtually all of Abujbarah's bankruptcy cases, whether chapter 11 or chapter 13, involve similar issues, *i.e.*, individuals seeking to retain real estate. The Bankruptcy Code prohibitions against modifying the rights of holders of claims secured only by the debtors' principal residence is clear. Regardless of the clarity of the law, Abujbarah has repeatedly filed pleadings asserting that the Bankruptcy Court has the authority to modify the rights of holders of claims secured only by the debtors' principal residence.

29. The first pleading of any kind filed by Abujbarah in a bankruptcy case was filed on May 22, 2009 in *In re Hernandez*, case no. 2-09-bk-03247-SSC. The pleading, an objection to a motion for relief from stay, asserts, among other things, that "In a Chapter 13 reorganization there is an

1 irrefutable presumption created that the debtor's home is necessary to effectively reorganize where the
2 debtor's primary purpose in filing the Chapter 13 petition is to save debtor's home." Such assertion is
3 not supported by existing law and, in fact, Abujbarah cites no authority for his assertion. In a Motion for
4 Rule 3012 Valuation of Real Property filed in *Hernandez*, Abujbarah cites <u>United Savings Association</u>
5 <u>of Texas v. Timbers of Inwood Forest Associates Ltd.</u>, 108 S.Ct. 626, 484 U.S. 365, 98 L. Ed. 2d 740,
6 for the proposition that "there would be no reason for a Chapter 13 reorganization without the residence."
7 Nowhere does the <u>Timbers</u> case refer to chapter 13 reorganization or a residence in that context. The
8 "Valuation" motion goes on to argue that the Court should apply 11 U.S.C. § 506 to bifurcate the secured
9 creditor's claim even though the claim is secured only by the debtors' principal residence which 11
10 U.S.C. § 1322(b)(2) excludes from such modification.

11       30. In the second pleading filed by Abujbarah, he made a frivolous argument for new
12 law in an Objection to Motion for Relief from the Automatic Stay filed in the case of *In re Khamis*, case
13 no. 2-09-bk-02344-RTB. In *Khamis*, Abujbarah argues the following in seeking to have the Court ignore
14 11 U.S.C. § 1322(b)(2):

> Law is the benchmark of society and now society comes before the Court with an urgent need for the Court to make new law. The current economic occurrence, the real estate market having collapsed has caused a great burden upon the "wage earner" to find a means of keeping the primary real property.
>
> The American judicial system has always protected the "castle." The judicial system, while separate in power from Congress is still part 1f then government which the people may petition.
>
> . . .
>
> Historically, the law has allowed one to protect his home by reasonable force. But the application of Section 1322(2) now allows predatory practices and bad faith actions by undersecured mortgage holders to take the "castle."

22 (*sic*).

23       31. Time and again in every bankruptcy case in which Abujbarah provides
24 representation and a motion for relief from stay on a claim secured only by the residence of the debtor
25 has been filed, Abujbarah has argued that the Court may ignore the specific language of 11 U.S.C. §§
26 1123(b)(5) or 1322(b)(2) and modify the rights of such claim holders. Abujbarah continues to make the
27 same argument even after being informed by various parties, chapter 13 trustees and the United States
28 Trustee that the arguments are invalid, unwarranted or wrong.

7

32. Abujbarah has asserted in a pleading filed in *In re Neiswender*, case no. 2-09-bk-18916-CGC, that, " . . . the U.S. Trustee duties and powers is to help the Debtor-in-Possession to reorganize his business and personal financial status." (*sic*). *See Debtors' Objection to United States Trustee's Motion to Dismiss or Convert*. There is no basis in law for such assertion.

## V. PRESENTING OR DENYING FACTUAL ALLEGATIONS AND OTHER FACTUAL CONTENTIONS THAT HAVE NO EVIDENTIARY SUPPORT

33. Many of Abujbarah's responses to motions for relief of the automatic stay on real property allege that the movant lacks standing based on the fact that the movant is not the holder in due course of the note. For example, in *In re Slikker*, case no. 2-09-bk-30245-CGC, two motions for relief from stay were filed. The first (at Docket No. 32) is a motion concerning the debtor's residence. Abujbarah's response (at Docket No. 39) alleges lack of standing and asserts that the movant did not comply with local rule 4001-1(b) and that the debtor has been making post-petition payments to the trustee. The allegation of lack of standing has no evidentiary support and Abujbarah did not make reasonable inquiry into the facts prior to making such allegation. The movant did, in fact, comply with local rule 4001-1(b) and filed a certification of such compliance (at Docket No. 34) prior to the submission of Abujbarah's response. Finally, the debtor could not have been making post-petition payments to the trustee because the debtor is a debtor-in-possession.

The second motion for relief was filed by a creditor asserting that it is the holder of the note and the beneficiary under the deed of trust (at docket no. 41). Abujbarah, without making reasonable inquiry into the facts to determine whether the movant is the holder in due course, filed a response (at docket no. 43) asserting the creditor is not the true holder of the note, that the movant did not comply with local rule 4001-1(b) and that the debtor was making post-petition payments to the trustee: the response is exactly the same as the response to the other motion for relief with only the secured creditors' name and the common address of the property in the caption being changed. Because the subject property is not the residence of the debtor, local rule 4001-1(b) does not apply and there has been no trustee appointed in the case. In all similar situations in his cases, whether chapter 11 or chapter 13, Abujbarah has filed the same response and, as it has turned out in every instance to date, the movant is the proper party.

8

34. In *In re Rundle*, Abujbarah included in his response to a motion to lift stay on a vehicle that the creditor did not comply with local rule 400-1(b). The local rule is not applicable.

35. Abujbarah has filed disclosures of compensation in chapter 11 cases. Each and every disclosure filed provides: "Prior to the filing of this statement I have received [specified amount]" and, "The source of the compensation paid to me was the Debtor."

In *In re Callahan*, case no. 2-09-bk-19765-CGC, Abujbarah disclosed that he had received $1,500 from the debtor. In response to an inquiry from the United States Trustee, Abujbarah stated in a letter dated October 6, 2009, and in reference to the *Callahan* case, the "Amount remaining as a retainer for post-petition services - $3500." In the letter referenced in the following paragraph, Abujbarah informed the United States Trustee that he received $836 in the *Callahan* case.

The United States Trustee suspected that Abujbarah had applied pre-petition retainers in chapter 11 cases to his fees without first applying for court approval. This suspicion was confirmed in open court when Abujbarah admitted to doing so (it was at this time that Abujbarah informed the court that he believed the 2016(b) statement was sufficient to apply retainers to his fees - see paragraph 21 above). The Court, in *In re Neiswender*, case no. 2-09-bk-18916-CGC, ordered Abujbarah to reimburse the retainer and place it in an IOLTA account. To ensure conformity with the order, the United States Trustee sent a letter to Abujbarah requesting, among other things, an accounting of funds received as retainers and verification that such funds have been placed in an IOLTA account. Abujbarah responded by letter on April 30, 2010 that the amounts disclosed as received by him from the debtors in all the chapter 11 cases were not actually received by him and that the amounts received were paid by Sellectricon, LLC or Executive Real Estate Solutions, LLC.

So, in the *Callahan* case referenced above, even though Abujbarah filed a document with the Court asserting he had received $1,500 from the debtor, and even though Abujbarah wrote in a letter to the United States Trustee that he had received $3,500 from the debtor, Abujbarah now says he only received $836, not from the debtor, but from a third party. Likewise, in *In re Zaia*, 2-09-bk-20214-CGC, Abujbarah disclosed to the Court that he received $4,995 from the debtor. In his April 30, 2010 letter to the United States Trustee, Abujbarah says he received $924 from a third party.

In fact, Abujbarah now asserts that every disclosure of compensation statement filed in

his chapter 11 cases is false. And Abujbarah has provide absolutely no evidence that money received for chapter 11 retainers has been deposited into an IOLTA account.

**VI. VIOLATION OF BANKRUPTCY CODE PROVISIONS PROHIBITING FEE SHARING**

36. On information and belief, in or around March, 2009, Abujbarah entered into an agreement with Sellectricon to provide legal representation to and for Sellectricon in a capacity that the parties to the agreement referred to as "in-house counsel."

37. Sellectricon is a Canadian corporation registered with the Arizona Corporation Commission on or about January 28, 2009 and is owned and operated by Terry Daley, "hereinafter referred to as "Daley"), a Canadian citizen residing in the State of Arizona.

38. Sellectricon's business involves promises of loan modification and/or debt reduction; customers were solicited by Daley and associated entities and individuals when the customers' homes were subject to foreclosure and they were promised that the principal mortgage on their homes would be reduced to the current value of the home.

39. The entities and individuals feeding clients to Sellectricon include No BS Mortgage Solutions, Sterling Loan Modification, Start Again, LLC, CramDown Resources of America, Executive Real Estate Solutions, Nexus Home Solutions, LLC, Home Retention, Lydia Renteria, Vincent Abramo, Juan Espinoza and Kent Axtell.

40. Most of Sellectricon's clients, after paying exorbitant fees, some in excess of $8,000, and failing to obtain a modification of their loans or reduction of debts, are steered into bankruptcy with the promise that the principal mortgage on their homes would be reduced to the current value of the home.

41. Based on a review of solicitations for clients and procedures, it appears that shuttling clients into bankruptcy is the main goal of Sellectricon.

42. Sellectricon's business included pre-bankruptcy planning and it required all new customers to fill out a bankruptcy worksheet providing information for the petition, schedules and statements to be filed in bankruptcy.

43. In the early stages of Sellectricon's business, its customers filed bankruptcy without counsel and, in all cases, under chapter 13. From February 11, 2009 through May 20, 2009, 9

Sellectricon customers filed *pro se* petitions under chapter 13.

44. When legal issues such as motions for relief or objections to plans were filed, Abujbarah, as Sellectricon's in-house counsel, would provide legal representation to the debtors and bill Sellectricon on an hourly rate for the services provided to the debtors. For example, in *In re Khamis*, Case no. 2-09-bk-03247-RTB, Abujbarah billed Sellectricon as follows:

| | | |
|---|---|---|
| 6/4/2009 | Notice of filing objection | 0.6 |
| | Objection | 1.7 |
| | Proposed order maintaining stay | 0.7 |
| 6/7/2009 | Review Bev's motion and make edits | 4.2 |
| 6/8/2009 | Amended motion | 0.5 |
| 8/11/2009 | Trial prep | 3.9 |
| 8/12/2009 | Prelim. Hearing | 1 |
| 9/16/2009 | Telephone conference with trustee & motion for extension | 1 |
| 9/28/2009 | Discussion with opposing counsel | 0.4 |
| 5/20/2009 | Draft motion | 0.6 |
| 10/14/2009 | Preliminary hearing | 1.1 |
| | Moratorium | 1.3 |

45. Abujbarah did not file a disclosure of compensation in the *Khamis* case nor did he, at any time, disclose that he was providing the debtor representation as in-house counsel to Sellectricon. Instead, Abujbarah filed a Notice of Appearance indicating that he "has been retained by the debtor" when in fact he was retained by Sellectricon.

46. Abujbarah billed Sellectricon in many other bankruptcy cases including in chapter 11 cases. Purportedly, Sellectricon paid Abujbarah with the funds received from its customers prior to the bankruptcy filing. Through April 19, 2010, every retainer received by Abujbarah in chapter 11 cases came from Sellectricon. The process is that the entity or individual associated with Sellectricon solicits customers and charges a fee. A portion of the fee is transferred to Sellectricon who provides the pre-bankruptcy planning and gathers information necessary to file a bankruptcy petition. Sellectricon then pays Abujbarah a portion of its share for representation of the debtor in bankruptcy proceedings.

**VII. ASSISTING NON-LAWYERS IN THE PRACTICE OF LAW IN BANKRUPTCY CASES**

47. Through his association with Sellectricon and the various associated entities and individuals, none of whom are attorneys admitted to practice law, Abujbarah assisted those entities and individuals in the practice of law.

48. In addition, Abujbarah assisted Beverly Hall (hereinafter referred to as "Hall"), a de-certified legal document preparer, in the practice of law.

49. In some cases, Sellectricon referred its customers to Hall to prepare the petition, schedules and statements as well as chapter 13 plans to be filed in bankruptcy. Hall had access to the worksheets completed by Sellectricon's customers to accomplish the tasks. In the 9 bankruptcy cases filed by Sellectricon customers on a *pro se* basis, Hall assisted the debtors in doing so even though she did not properly disclose her role as a bankruptcy petition preparer in all those cases.

50. Once Abujbarah began representation of the debtors in the 9 *pro se* cases, both Hall and Sellectricon continued providing legal services to the debtors with Abujbarah's knowledge, consent and assistance. For example, in the *Khamis* case, the notice of appearance filed by Abujbarah says, "Please also be advised that Beverly Hall is an agent of the above mentioned attorney."

51. Abujbarah assisted in drafting the forms and bankruptcy worksheets provided by his client, Sellectricon, to its new customers.

52. Sellectricon informed its customers that use of their "in-house counsel," *i.e.*, Abujbarah, was a matter of convenience for the customers because documents could then be filed under Abujbarah's electronic case filing password and the customers would not have go to the courthouse to file documents.

53. After a petition was filed by Abujbarah as attorney for the debtor, whether in chapter 11 or chapter 13 cases, Sellectricon would continue to provide services to the debtors. Post-petition, Sellectricon would negotiate with creditors, monitor for violations of the automatic stay and review correspondence from creditors to debtors. Sellectricon also acted under Abujbarah's direction to inform creditors to cease and desist collection efforts and instructions to debtors of what to expect after the petition is filed.

54. By assisting non-lawyers as detailed above, Abujbarah has violated E.R. 5.5 which provides, "A lawyer shall not assist another in the unauthorized practice of law."

### VII. FALSE CLAIMS AND CONFLICTS

55. In many chapter 13 cases, Abujbarah would include Sellectricon in the proposed plan as an administrative claimant.

1    56.    Sellectricon's fee agreement with its customers included, among other things, a provision for continuing administrative fees generally in the amount of $99 per month.

57.    Sellectricon's post-petition fees do not fall within any category under 11 U.S.C. § 503.

58.    By including Sellectricon's putative post-petition claims as administrative claims, Abujbarah essentially filed false claims on behalf of his client, Sellectricon, against his client, the debtor.

59.    Bar Rules provide that an attorney has an ethical duty not to represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer. *E.R. 1.7*

Abujbarah was retained by Sellectricon to represent it as "in-house counsel." Abujbarah then undertook representation of Sellectricon's customers and included in their chapter 13 plans what he classified as administrative claims of Sellectricon which claims are neither administrative in nature nor legitimate claims. Such actions were directly adverse to the bankruptcy debtors. In addition, Abujbarah took legal direction from Sellectricon in his representation of bankruptcy clients by deferring to the advice given to them by Sellectricon, to wit: that the Bankruptcy Code would allow the cram down of the first mortgages on their homes to the current value of the homes and to discontinue making mortgage payments and/or payments on vehicles.

60.    Abujbarah's involvement with Sellectricon and with other entities brings into question his associations with non-lawyers relative to ensuring that the non-lawyers' conduct is compatible with the professional obligations of the lawyer and may be in violation of E.R. 5.3.

61.    Further, because Abujbarah was aware of and consented to Sellectricon's assertions to its customers that Abujbarah was part of Sellectricon's legal team, as well as agreeing to the sharing of fees, Abujbarah entered into a de-facto partnership with Sellectricon the activities of which included the practice of law.

62.    The association of Abujbarah and Sellectricon was so entwined that Sellectricon

developed a case management system for tracking actions taken in bankruptcy cases in which Abujbarah is or was attorney of record. The system is located at www.principalreductionportal.com and is accessible only with a password. Copies of numerous documents obtained from the case management system will be produced as evidence herein.

63. A lawyer shall not form a partnership with a non-lawyer if any of the activities of the partnership include the practice of law. A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services. A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if: (1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; (2) a nonlawyer is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation; or (3) a nonlawyer has the right to direct or control the professional judgment of a lawyer. E.R. 5.4

64. By his association with Sellectricon, Abujbarah violated E.R. 5.4.

65. By letter dated March 10, 2010, the United States Trustee expressed concerns to Abujbarah relative to possible ethical violations, Abujbarah's knowledge and competence as well as his case load, which, at the time was approximately 157 chapter 13 cases and approximately 41 chapter 11 cases. It was suggested that it may be appropriate for Abujbarah to focus on the then pending cases and gain further experience rather than continuing to increase his case load. Abujbarah responded on March 12, 2010 indicating he would scale back to accepting 4-5 new chapter 13 cases and 1-2 chapter 11 cases per month. By April 19, 2010, however, Abujbarah had filed 60 new bankruptcy cases.

66. Abujbarah has been provided numerous opportunities to develop the skills and knowledge reasonably necessary to provide adequate and competent representation to his bankruptcy clients. His failure to do so is manifested by, among other things, the fact that, in his cases, not one chapter 13 plan has been approved, not one chapter 11 plan has been confirmed, not one motion for relief has been successfully contested and as a result, people have lost their homes even though Abujbarah and Sellectricon had promised they would be able to cram down the loans on them under bankruptcy law.

## VIII. FALSE OATH, FALSE CERTIFICATION, FALSIFICATION OF DOCUMENTS AND VIOLATIONS OF 11 U.S.C. §§ 526, 527 AND 528

67. On March 16, 2010, a voluntary petition was filed by Abujbarah commencing the bankruptcy case of Addison and Sherri White, case no. 2-10-bk-07150-RTB.

68. Exhibit B on the petition provides the following:

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. § 342(b).

69. Exhibit B to the said petition has the signature of Abujbarah and Abujbarah also signed the petition as attorney for the debtors.

70. The said petition indicates that it has been signed under penalty of perjury by Addison and Sherri White.

71. Various exhibits, schedules and statements accompanying the petition and other documents filed in the case also indicate that Addison and Sherri White signed the documents under penalty of perjury.

72. The petition indicates that the Whites have not filed a bankruptcy case within the last 8 years. In fact, the Whites had a pending bankruptcy case at the time that Abujbarah filed a petition without their knowledge. The case is *In re Addison and Sherri White*, case no. 2-09-bk-33035-RTB filed on December 22, 2009.

73. The statement of financial affairs filed by Abujbarah in the *White* case, at item 9, discloses that the Whites paid Abujbarah for representation in bankruptcy $1,250 on October 9, 2009, $1,000 on November 1, 2009 and $2,000 on December 1, 2009. Information at the said item Abujbarah failed to disclose is $6,500 paid to Kent Axtell and/or Executive Real Estate Solutions, a non-attorney bankruptcy petition preparer, for consultation concerning debt consolidation or relief under the bankruptcy law.

74. Abujbarah filed a disclosure of compensation statement in the *White* case certifying that he is the attorney for the Whites and that they paid him $4,000 for services rendered or to be rendered

in the bankruptcy case.

75.     Prior to the filing of the petition in the *White* case, Abujbarah had never met, spoken to or consulted with Addison or Sherri White.

76.     The Whites never signed any of the documents filed by Abujbarah.

77.     The Whites never paid Abujbarah any money.

78.     The Whites never authorized Abujbarah to file a petition in bankruptcy on their behalf.

79.     The Whites never retained Abujbarah to represent them in any capacity.

80.     Information used to complete all the documents filed by Abujbarah in the White case was provided to Abujbarah by Kent Axtell.

81.     The $4,000 paid as disclosed by Abujbarah was paid to Abujbarah by Kent Axtell.

82.     The Whites were unaware of the filing of the petition in bankruptcy by Abujbarah.

83.     The petition filed by Abujbarah while another case was pending caused City of Mesa and Salt River Project to demand additional deposits which the Whites had to pay. Additionally, the Whites' bank account was closed and they did not receive pension funds which were to be deposited directly into the account that was closed.

84.     Abujbarah is a debt relief agency as that term is defined at 11 U.S.C. § 101(12A).

85.     Abujbarah has failed to perform a service that he informed assisted persons or prospective assisted persons that he would provide in connection with a bankruptcy case.

86.     Abujbarah has made statements in documents filed in bankruptcy cases that are untrue and misleading, or that upon the exercise of reasonable care, should have been known by Abujbarah to be untrue or misleading.

87.     Abujbarah misrepresented to assisted persons or prospective assisted persons the benefits and risks that may result if such person becomes a debtor in a bankruptcy case.

88.     Abujbarah's errors, omissions, misrepresentations and other defalcations were, at best, negligent and, at worst, intentional.

89.     Abujbarah has provided bankruptcy assistance to an assisted person in a bankruptcy case that was dismissed because of his intentional or negligent failure to file required documents.

90.     Abujbarah failed to provide the Whites with any pre-bankruptcy disclosures as

required pursuant to 11 U.S.C. § 527.

91. Abujbarah failed to obtain a written fee agreement with the Whites as required pursuant to 11 U.S.C. § 528.

WHEREFORE, the United States Trustee and Edward J. Maney, chapter 13 trustee, Plaintiffs herein, respectfully request that the court grant the following relief:

1. Issue an injunction prohibiting Nasser U. Abujbarah from practicing law in the United States Bankruptcy Court for the District of Arizona.

2. Disgorgement of fees.

3. Payment of a penalty to the Court.

4. For whatever other relief the Court deems just, appropriate or necessary.

RESPECTFULLY SUBMITTED THIS 15th day of June. 2010.

| | |
|---|---|
| ILENE J. LASHINSKY<br>United States Trustee<br>District of Arizona | EDWARD J. MANEY<br>Chapter 13 trustee |
| /s/ RJC (#WI 01006631)<br>RICHARD J. CUELLAR | EJM #012256<br>EDWARD J. MANEY<br>Chapter 13 trustee |